# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| **JUAN CARLOS RAMIREZ-GALVAN,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:07-CR-73 |
| ) | No. 2:09-CV-17 |
| **UNITED STATES OF AMERICA,** ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Juan Carlos Ramirez-Galvan ("petitioner" or "Ramirez-Galvan"), a federal prisoner, has filed this "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 44]. The United States has responded in opposition, [Doc. 52]. No reply has been filed by the petitioner. The matter is now ripe disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be DENIED.

**I.  Procedural and Factual Background**

On July 18, 2007, Ramirez-Galvan was indicted by the federal grand jury and charged in a two count indictment, along with co-defendant Megean Roark, with conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B) (Count One) and with possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Count Two), [Doc. 1]. On July 31, 2007, the United States filed an information pursuant to 21 U.S.C. § 851(a)(1) giving notice of the government's intention to seek increased punishment by reason of a prior felony drug conviction for possession of cocaine on

April 22, 2003 in the Durham County, South Carolina Superior Court, [Doc. 10]. [1] On September 6, 2007, the petitioner's negotiated plea agreement was filed with the Court, [Doc. 18], and petitioner pled guilty pursuant to the plea agreement on September 27, 2007, to Count One of the indictment.

As part of his plea agreement, the petitioner stipulated to the following facts and admitted to the following conduct under oath at the change of plea hearing:

> a) Through the testimony of several witnesses, to include coconspirators, the government would demonstrate, beyond a reasonable doubt, that from approximately March, 2006, and continuing to on or about July 6, 2007, the defendant did knowingly and intentionally conspire with at least one other person to distribute and possess with the intent to distribute at least three kilograms of a mixture or substance containing a detectible amount of cocaine, a Schedule II, controlled substance.
>
> b) In furtherance of the conspiracy, defendant Ramirez-Galvan traveled from the Eastern District of Tennessee to North Carolina to purchase kilogram quantities of cocaine that he transported back to the Johnson City, Tennessee, area for further distribution.
>
> c) Beginning in approximately January, 2007, DEA and 1st DTF agents had received information that defendant Ramirez-Galvan and co-defendant Megean Roark were bringing kilogram quantities of cocaine to Johnson City, Tennessee, that they provided the drugs to distributors who then sold the drugs to customers in Johnson City, that they used local hotel rooms as a base of operations, and that they were currently in Johnson City unloading a shipment.
>
> d) On July 6, 2007, Johnson City Tennessee Police Officers located Ramirez-Galvan's Ford Windstar van at the Days Inn in Johnson City, Tennessee. The officers identified the room Roark had rented at the hotel and knocked on the door. Roark and Ramirez-Galvan were present in the room and consented to a search of the room.
>
> e) During the search of the hotel room, officers found a Ford owner's manual pouch on the desk that contained 14.5 grams of cocaine, an empty digital scales box, several local hotel room keys and a Johnson City Power

---

[1] On December 27, 2007, the government filed an amended information which corrected the state of conviction to North Carolina rather than South Carolina, [Doc. 30].

Board bill in the name of Juan Carlos Ramirez. Near the dresser the officers found a set of digital scales that matched the empty box in the pouch. The scales had white powder on them.

f) Behind the dresser, officers found a bag of cocaine weighing approximately 591 grams. A small amount of marijuana was found in a recliner chair in the room.

g) During the search of Ramirez-Galvan's person, officers found four packages of cocaine and $2,165.00 in his pants. Another package of cocaine fell out of his pants when he removed his boots.

h) Co-defendant Roark consented to a search of her red Ford Explorer. During the search officers found Inositol. Roark told the officers that Ramirez-Galvan used Inositol to cut the cocaine and that he did that using a blender.

i) Ramirez-Galvan was advised of his rights in Spanish and waived his rights and agreed to give a statement where he admitted the following. Ramirez-Galvan admitted to being in the United States illegally and said he crossed into Arizona eleven years ago. Ramirez-Galvan said that the pouch in the hotel room belonged to him and that he had cocaine on his person when the police came to the room because he was getting ready to sell it. Ramirez-Galvan stated that he had picked up a kilogram of cocaine on June 28, 2007, in Raleigh, North Carolina and that the cocaine in the hotel room was the remainder of that kilo. During the past three to four months, he had picked up another half-kilogram from this supplier in Raleigh. Ramirez-Galvan further admitted that from February, 2007, to July, 2007, he obtained 3/4 of a kilogram of cocaine from a supplier in Durhan [sic], North Carolina.

j) Co-defendant Roark admitted that from March, 2006, to June, 2007, she and Ramirez-Galvan had made at least 20 trips to North Carolina to pick up cocaine. On each trip they obtained up to nine ounces of cocaine. Roark stated that on June 28, 2007, Ramirez-Galvan, who had traveled to North Carolina, returned with two kilograms of cocaine.

A presentence report ("PSR") was ordered and prepared by the probation office. Because the petitioner was subject to a statutory mandatory minimum sentence of ten years, the PSR established his advisory guidelines range as 120 months. Petitioner had acknowledged in his plea agreement that he was subject to a mandatory ten years up to life and was advised of the statutory range of imprisonment orally

3

by the Court during the change of plea hearing. No objections were filed to the PSR. At sentencing on February 4, 2008, the Court sentenced petitioner to the statutory mandatory minimum ten years of imprisonment, advised the defendant of his right to file a direct appeal, and judgment was entered on February 14, 2008, [Doc. 42]. No direct appeal was filed by the petitioner and his § 2255 motion was filed timely on February 9, 2009.

## II.     Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, ..." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one

of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective

assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### III. Analysis and Discussion

In his § 2255 motion, Ramirez-Galvan raises a claim of ineffective assistance of counsel. More specifically, he alleges that counsel was ineffective in three ways: (1) counsel failed to advise the movant of the consequences of 21 U.S.C. § 851; (2) counsel refused to file a notice of appeal despite petitioner's repeated requests that he do so; and (3) counsel improperly advised petitioner to admit the drug quantity.[2]

**A.     Drug Quantity**

As "Claim I" petitioner alleges that counsel was ineffective because "[c]ounsel failed advising **MOVANT** to sign and admit the drug quantity." Although this statement is somewhat nonsensical, it appears that petitioner is in reality claiming that there was not an adequate factual basis to support his guilty plea of conspiring to distribute and to possess with the intent to distribute 500 grams or more of cocaine. Ramirez-Galvan's argument fails for a very simple reason--he admitted, both in his plea agreement and at the change of plea hearing under oath, that he conspired with at least one other person "to distribute and to possess with the intent to distribute at least three kilograms" of cocaine. He further admitted that he transported kilogram quantities of cocaine to the Johnson City, Tennessee area from North Carolina for further distribution, and more than 500 grams of cocaine was found behind the dresser of petitioner's rented hotel room, in which Ramirez-Galvan was located, along with the co-defendant, on July 6, 2007. During a search of Ramirez-Galvan's person, officers found four packages of cocaine and $2,265.00 in cash. Another package of cocaine fell out of his pants when he removed his boots. He admitted to the officers that the cocaine in the hotel room belonged to him and that he was getting ready to sell it. He further admitted that from February 2007 to July 2007 he obtained 3/4 of a kilogram of cocaine from a supplier in Durham, North Carolina. Ramirez-Galvan's argument as to drug quantity fails

---

[2] This claim was raised in petitioner's memorandum in support of his motion, not in the motion itself.

both factually and legally.

**B.     21 U.S.C. Section 851**

A person who violates 21 U.S.C. § 841(a) in a case involving 500 grams or more of cocaine and who commits such a violation after a prior conviction for a felony drug offense has become final, is subject to a mandatory minimum term of imprisonment of not less than ten years nor more than life imprisonment.  21 U.S.C. § 841(b)(1)(B).  As noted above, the United States filed a notice of enhancement in his case giving notice of its intent to seek this enhanced term of imprisonment in this case based upon Ramirez-Galvan's previous conviction for a felony drug offense in North Carolina.  The petitioner alleges that he was never shown this information and "cannot be sure if he was advised orally." He does allege that he was "never advised by counsel of the enhanced penalties that was exposed to." He further alleges that he was not told that pursuant to 21 U.S.C. § 851(e) he was barred from challenging the validity of a prior drug conviction which occurred more than five years before the date of the information.

Once again, the record in the case clearly contradicts the petitioner's allegations.  First of all, it is clearly set forth in petitioner's plea agreement that, upon his guilty plea, he is subject to a ten year mandatory minimum term of imprisonment.  Secondly, the transcript of the change of plea hearing demonstrates that the petitioner was informed by the Court of the significance of his prior felony drug conviction as reflected in the mandatory minimum ten year term of imprisonment.  In addition, at the sentencing hearing, the Court informed the petitioner orally that the government had filed the information pursuant to 21 U.S.C. § 851 which alleged a prior felony drug conviction on April 22, 2003, in the Durham County, Superior Court.  Ramirez-Galvan was clearly advised by the Court that any challenge to that prior conviction must be made before sentencing.  Ramirez-Galvan clearly and unequivocally

8

affirmed that he was convicted of the offense as set forth in the government's information.

Furthermore, the PSR noted that the government had filed a § 851 notice and also advised petitioner of the effect of the prior conviction and his guidelines range in the case. The petitioner affirmed at his sentencing hearing that he had received and read a copy of the PSR.

Finally, as the United States points out, it is unclear from the record how § 851(e), of which the petitioner alleges that he was unadvised, affects the petitioner. That section provides that a person convicted of a drug trafficking offense may not "challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). Here, petitioner's conviction was on April 22, 2003; the government's notice was filed on July 31, 2007. Since five years do not separate the date of the conviction and the date of the notice, § 851(e) has absolutely no application to petitioner's case.

In sum, the record clearly contradicts petitioner's claim related to 21 U.S.C. § 851 and his claim fails both legally and factually.

### C. Failure to File Notice of Appeal

As "claim III" petitioner states: "Petitioner repeatedly requested an appeal (*i.e*. N.O.A. filed) to defense counsel; which he refused to file." Other than that, petitioner alleges absolutely no facts in support of his conclusory allegation. He does not claim when or where he made his repeated requests. More specifically, he does not claim that he made any such request within the time permitted for the filing of a notice of appeal.

In response, the government has offered the affidavit of petitioner's trial counsel, Tim S. Moore. Mr. Moore states that, to his knowledge, "Mr. Ramirez-Galvan never requested that our office file a timely appeal in his case." Mr. Moore also declares that his office sent a letter to Ramirez-Galvan on

9

February 15, 2008, advising him that he had until February 29, 2008, to file an appeal and advised him that Moore did not believe he had any basis for an appeal and would not file an appeal unless advised to do so. Mr. Moore further declares that the first indication he had from Ramirez-Galvan of any dissatisfaction with his conviction or sentence was by letter, written in English, dated July 21, 2008. That letter did not request an appeal; it simply expressed dissatisfaction by Ramirez-Galvan with his sentence compared to the sentences received by other inmates in his institution. Importantly, Ramirez-Galvan was served with a copy of the government's response and the attached affidavit from Mr. Moore by regular United States Mail but Ramirez-Galvan never responded further by offering any additional factual allegations nor did he attempt to contradict in any way the affidavit of Tim Moore.

In the context of a failure by counsel to file a notice of appeal, the question of whether such failure constitutes ineffective assistance of counsel is governed by the rule set forth in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that an attorney who disregards instructions from his client to appeal has acted "in a manner that is professionally unreasonable." *Id.* at 477. Moreover, when an attorney fails to follow express instructions to appeal, prejudice is presumed. *Id.* at 483. If the petitioner did not specifically direct his attorney to file an appeal, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes. *Id.* at 478. If so, the attorney has acted unreasonably only if he ignored the petitioner's wishes to appeal. *Id.* If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to inquire. *Id.* Consulting a client about appealing is not constitutionally required in every case. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id.* at 479

(emphasis in original).

An attorney has a constitutionally imposed duty to consult when there is reason to think either (1) that a rational defendant would want to appeal (for example there are non-frivolous grounds for appeal), or (2) his client reasonably demonstrated an interest in appealing. *Id.* at 480. In making this determination, courts must take into account all the information counsel knew or should have known at the time. *Id.* Highly relevant factors include whether the conviction resulted from a trial or a plea and whether the defendant expressly waived his appellate rights. *Id.* Because the failure to file a notice of appeal results, not in the denial of a fair proceeding, but in the denial of a proceeding all together, the prejudice prong of the Strickland test for ineffectiveness of counsel in this context requires the petitioner to demonstrate that, but for his counsel's omission, there is a reasonable probability that he would have timely appealed. *Id.* at 480.

Ordinarily, under the circumstances where a petitioner claimed that his attorney had failed to file a notice of appeal despite express instructions to do so, the court would order an evidentiary hearing to be conducted. In this case, however, petitioner makes no specific allegation, except for a conclusory statement, that he made a timely request of his counsel to file a notice of appeal. The Court also finds it quite telling that Ramirez-Galvan, after being served with a copy of his trial counsel's affidavit, failed to file any reply to the government's response or to take issue in any way with the facts set forth in his attorney's affidavit. Simply put, the conclusory allegations of Ramirez-Galvan that he repeatedly instructed counsel to file a notice of appeal are not supported by any factual allegations and, in the face of counsel's affidavit, are simply not credible. Tim Moore is an experienced criminal defense attorney who has practiced in this Court for many years. This Court fully credits his affidavit and finds that there was no ineffective assistance of counsel by failure to file a notice of appeal as requested.

It is undisputed from the record in this case that Mr. Moore did not consult with the petitioner subsequent to his sentencing hearing concerning his right to appeal. The Court must determine, therefore, whether counsel had any duty to consult with the petitioner concerning the filing of an appeal. In determining whether petitioner's attorney had such a duty, this Court must apply the two-part test set forth above and determine whether or not a rational defendant would want to appeal or whether the particular client reasonably demonstrated an interest in appealing. In making this determination, as set forth above, this Court must take into account all of the information counsel knew or should have known at the time.

The record in this case clearly establishes that Ramirez-Galvan was advised by the Court at the conclusion of his sentencing hearing of his right to appeal and that the clerk would file a notice of appeal for him upon his request. He made no such request at the time and, indeed, the first contact the Court had from Ramirez-Galvan concerning a notice of appeal was his letter dated June 13, 2008, four months after the entry of judgment, in which he inquired of the clerk "whether my attorney on Record did File the notice of my direct Appeal that of which I had requested him to File," [Doc. 43]. He also apparently wrote a letter to his trial counsel on July 21, 2008, which, while expressing dissatisfaction with his sentence, made no mention of the filing of an appeal.

Furthermore, petitioner expressly waived his right to appeal in the plea agreement, [Doc. 18, ¶ 14]. This appellate waiver was called to the attention of the petitioner at the change of plea hearing, he acknowledged his understanding of the waiver, and he acknowledged that he had fully discussed the waiver with his attorney. His attorney, quite reasonably so, concluded that there were no viable issues for appeal in the case. Ramirez-Galvan had raised no suppression issues in the case, and he points to none now, he received the minimum sentence required by statute and, even now, he points to no arguable

issue on appeal. Under these circumstances, the Court concludes that counsel had no duty to consult with the petitioner about an appeal and, therefore, the failure to do so did not violate the Sixth Amendment. The unrebutted proof in the case establishes that petitioner's attorney never received any timely indication that the petitioner wished to file an appeal. Given that petitioner had waived his right to a direct appeal in his plea agreement with the United States and the lack of any non-frivolous grounds for appeal, it was not error for counsel to fail to consult with his client concerning an appeal immediately following the entry of judgment because, on the facts presented, no rational defendant would have desired an appeal. The record in the case also clearly establishes that the waiver of the right to file a direct appeal was knowingly and voluntarily made by the petitioner. The uncontradicted evidence and testimony at the change of plea hearing was that petitioner's attorney had explained all of the terms and provisions of the plea agreement, that Ramirez-Galvan had read and understood the terms and conditions of the plea agreement, that he understood that his plea agreement expressly waived his appellate rights and that he had fully discussed that waiver with his counsel. Petitioner never contacted the Court or the clerk of the Court to express any timely interest in appealing the Court's sentence. The Court therefore finds the petitioner's allegation of ineffective assistance of counsel on this ground is without merit.

**IV.     Conclusion**

For the reasons set forth herein, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and the case DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals

disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurors would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE